IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CRYSTAL BONAR,
      Plaintiff,

    v.                                              Case No. 2:08-CV-560
                                                  MAGISTRATE JUDGE KING
JUDITH ROMANO, M.D., et al.,
      Defendants.

## OPINION AND ORDER

This matter is before the Court with consent of the parties, 28 U.S.C. § 636(c), for consideration of the Defendants' Motion for Summary Judgment (Doc. #43) and the Plaintiff's Motion to Strike (Doc. #49). For the reasons that follow, the Defendants' motion is denied and the Plaintiff's motion is granted.

### I.

Plaintiff, Crystal Bonar ["Plaintiff"], brings this action against her former employer, Judith Romano, M.D., and Plaintiff's supervisor, Paul Romano, claiming that she was sexually harassed and subjected to a hostile work environment in violation of O.R.C. § 4112.02. Plaintiff also asserts a claim for intentional infliction of emotional distress. Plaintiff is a registered nurse and resides in the State of West Virginia. Defendants reside in the State of Ohio. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff worked as a registered nurse in the office of Dr. Judith Romano[1]. Dr. Romano's husband, Defendant Paul Romano, was the office manager. *Deposition of Crystal Bonar*

---

[1] Plaintiff's employment began in August 2001. *Plaintiff's Depo.* at 10.

["*Plaintiff's Depo.*]" at 93-94. Plaintiff alleges that, from June 2004 until December 2004, Defendant Paul Romano made various inappropriate sexual comments and innuendos directed at her. Plaintiff claims that, on one occasion, Defendant Paul Romano asked Plaintiff to come into the office kitchen because he had something to ask her. According to Plaintiff, Defendant Paul Romano whispered in her ear, asking if she was wearing underwear. *Id.* at 164-66. Plaintiff alleges that, on different occasions subsequent to this encounter, Defendant Paul Romano commented about whether and what kind of underwear Plaintiff may be wearing.[2] *Id.* at 170-71; *see also Plaintiff's Affidavit*.

Plaintiff alleges that Defendant Paul Romano made an inappropriate sexual comment on another occasion while Plaintiff and a co-worker were eating a piece of pie in the office kitchen. According to Plaintiff, Defendant Paul Romano commented on the whipped cream on the pie, saying "something about it being between my legs or I wished it was between my legs." *Id.* at 177. Plaintiff testified that she was "disgusted" by the comment and threw the pie in the trash. *Id.* at 178. On another occasion, when there were issues with heating in the building, Defendant Paul Romano allegedly told Plaintiff "it's just you that's hot." *Id.* at 180-81. Plaintiff also claims that, three days before the office Christmas party, Defendant Paul Romano asked Plaintiff to "come back [to the chart room] and receive the Christmas gift" that he had for her. *Id.* at 186. Plaintiff alleges that Defendant Paul Romano told her in a "whispering tone" that he had purchased a Christmas gift for her. *Id.* at 187. He also allegedly said, "I want you to put them on. I don't want your husband to know you're wearing them." *Id.* Plaintiff told Defendant Paul Romano that she would not accept a gift and Defendant allegedly responded, "We'll see." *Id.*

---

[2]These comments allegedly occurred in the presence of another of Plaintiff's co-workers. *Plaintiff's Depo.* at 171-73.

Plaintiff alleges that Defendant Paul Romano also commented on her "sexual activity, or lack of it." *Plaintiff's Affidavit*. Plaintiff asserts that, in the presence of a co-worker, Defendant Romano "said that I must not have 'gotten any' last night." *Id.* Plaintiff also asserts that Defendant Romano "would come up from behind me and, with both hands, start rubbing my shoulders. . . like a massage." *Id.* Plaintiff avers that "[o]n many of these occasions he would start whispering in my ear, wondering what I was wearing underneath my clothes." *Id.*

Plaintiff testified on deposition that she did not report any of these alleged instances to Defendant Dr. Judith Romano. *Plaintiff's Depo.* at 190. Plaintiff attended the office Christmas party in 2004 and resigned from employment on Monday, December 20, 2004. *Id.* at 194-95. Plaintiff attributes her resignation to the stress caused by the inappropriate comments allegedly made by Defendant Paul Romano. Plaintiff claims that the inappropriate comments affected her emotionally while she was at work. *Id.* at 203. According to Plaintiff, she often felt "physically ill" and often vomited. *Plaintiff's Affidavit*. Plaintiff avers that, after leaving her job, she tried to handle her feelings on her own. *Id.* She later sought professional therapy. *Id.* There was no official policy regarding sexual harassment at Dr. Romano's office. *Deposition of Dr. Judith Romano* at 14-15.

## II.

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The judgment sought shall be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Pursuant to Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." *Id*. In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

# III.

## A. Sexual Harassment - Hostile Work Environment

Defendants move for summary judgment on Plaintiff's claim of sexual harassment based on a hostile work environment. Defendants first contend that Plaintiff's claim fails because she did not file an administrative claim with the Ohio Civil Rights Commission pursuant to O.R.C. § 4112.05. This provision states, in pertinent part:

> (A) The commission, as provided in this section, shall prevent any person from engaging in unlawful discriminatory practices, provided that, before instituting the formal hearing authorized by division (B) of this section, it shall attempt, by informal methods of conference, conciliation, and persuasion, to induce compliance with this chapter.
>
> (B) (1) Any person may file a charge with the commission alleging that another person has engaged or is engaging in an unlawful discriminatory practice. . . .

O.R.C. § 4112.05.

While Plaintiff in this case certainly could have filed a charge of discrimination with the Ohio Civil Rights Commission, her failure to do so does not foreclose this action claiming violation of O.R.C. § 4112.02.[3] Plaintiff can file an administrative claim or she can file a civil action for alleged violation of Section 4112.02. *See Noday v. Mahoning Cty. Sheriff*, 147 Ohio App.3d 38 (2002). In fact, pursuit of an administrative charge under Section 4112.05 has been

---

[3]This provision states:

It shall be an unlawful discriminatory practice:
(A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions or privileges of employment, or any matter directly or indirectly related to employment.

O.R.C. § 4112.02(A). Section 4112.99 provides for a civil action for violations of Chapter 4112 of the Revised Code.

5

held to foreclose a later civil action. *See Huston v. Mittel Steel USA,* 2006 WL 2709776, *3 (S.D. Ohio September 20, 2006) (citing *Vinson v. Diamond Triumph Auto Glass,* 149 Ohio App.3d 605 (2002)). To the extent that Defendants' motion for summary judgment is based on Plaintiff's failure to pursue administrative relief prior to filing suit, the motion is without merit.

The Court now considers the merits of Plaintiff's claim that she was subject to sexual harassment based on a hostile work environment. Under O.R.C. § 4112.02, a plaintiff may prove either of two types of sexual harassment: (1) "*quid pro quo*" harassment, *i.e.*, harassment that is directly linked to the grant or denial of a tangible economic benefit; or (2) "hostile environment" harassment, *i.e.*, harassment that does not affect economic benefits but which has the purpose or effect of creating a hostile or abusive work environment. *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 176 (2000). Caselaw interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, is applicable to cases involving alleged violations of Chapter 4112 of the Ohio Revised Code. *Id.* at 175, citing *Plumbers & Steamfitters Joint Appreticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981).

In order to establish a claim of sexual harassment based on a hostile work environment, a plaintiff must show:

> (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Id.* at 176-77.

Applying these elements to the case at bar, it is undisputed that the alleged instances of

6

sexual comments and innuendos directed at Plaintiff were unwelcome.  Second, it is undisputed that the comments were based on Plaintiff's sex.  As to the third element, the test for whether a hostile work environment exists requires this Court to consider both objective and subjective components.

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview.  Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993).   Whether a work environment is sufficiently hostile or abusive is determined by considering all the circumstances surrounding the conduct alleged by the plaintiff.

> These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive.  But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Id.,* at 23.  Conduct that is merely "offensive" is not actionable.  *Id.* at 21.  The United States Court of Appeals for the Sixth Circuit has found that sexual comments and harassing acts of a "continual" nature are likely to be considered pervasive.  *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998).  In addition, the presence of an element of "physical invasion" renders the context more severe than harassing comments alone.  *Williams v. General Motors Corp.*, 187 F.3d 553, 563 (6th Cir. 1999).

In this case, Plaintiff's deposition testimony reveals that she subjectively perceived

7

Defendant Paul Romano's comments as hostile or abusive. Although Plaintiff did not testify that she felt physically threatened by Defendant Romano's conduct, and she concedes that she did not report his alleged conduct, neither of these facts is inconsistent with Plaintiff's assertion that she subjectively perceived the conduct as hostile or abusive. *See Id.* at 566. While Defendants point out that Plaintiff has not shown that the alleged misconduct prevented her from performing her job, *Reply Memorandum*, Doc. No. 56, at 6, Plaintiff need not make such a showing. *See Id.,* at 567. Rather, Plaintiff need show only that the harassment made it difficult to perform her job. *Id.* On deposition, Plaintiff testified that the alleged conduct of Defendant Paul Romano affected her emotionally while she was at work, and thereafter. *Plaintiff's Depo.* at 203. In sum, the Court finds that the record contains evidence sufficient to establish that Plaintiff subjectively perceived her work environment as hostile or abusive.

As to the objective element, the Court concludes that genuine issues of material fact exist so as to preclude summary judgment on Plaintiff's hostile work environment claim. The Court does not regard the allegations made by Plaintiff in this case as "simple teasing" or "offhand comments" that would not amount to a hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Plaintiff alleges several instances of inappropriate sexual remarks, including the recurring questioning regarding Plaintiff's underwear. Plaintiff also alleges that Defendant Paul Romano came up from behind, rubbed her shoulders and whispered in her ear. Plaintiff characterizes these instances of inappropriate behavior as "frequent" and "ongoing." *Plaintiff's Affidavit*. Plaintiff claims that the conduct occurred when she was alone in a room as well as in the presence of a co-worker. *Id.* In the Court's view, whether this conduct was severe or pervasive so as to amount to a hostile work environment is for the trier of

8

fact to assess.[4] As the Sixth Circuit has held, "[w]hether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is 'quintessentially a question of fact.'" *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008), quoting *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006).

Defendants also contend that summary judgment on Plaintiff's claim is warranted because Defendant Paul Romano was not an employee of Dr. Judith Romano. *Motion for Summary Judgment*, Doc. No. 44, at 6-7. Liability under O.R.C. § 4112 is limited to discrimination by an "employer." Section 4112.01(A)(2) defines "employer" as "any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of the employer." The Ohio Supreme Court has held that this definition includes supervisors and managers. *Genaro v. Cent. Transport, Inc.*, 84 Ohio St.3d 293 (1999). Thus, a supervisor can be held individually liable as an employer under § 4112.02.

Although Defendant Paul Romano disputes that he was an "employee" of his wife, Defendant Paul Romano does not contest that he was Plaintiff's supervisor. On deposition, Defendant Paul Romano characterizes himself as a self-employed business consultant. *Deposition of Paul Romano* at 8. Defendant Romano also testified that he was the office manager for his wife's medical practice from 1990 to December 2007. *Id.* at 9. During the time

---

[4] In their *Reply Memorandum*, Doc. No. 56, Defendants focus on the attire of Plaintiff and her husband at the December 2003 office Christmas party, before certain instances of alleged harassment. Plaintiff testified on deposition that she wore a leopard print sweater, black gloves, a black mask with feathers and dark pants with a long tail attached. *Plaintiff's Depo.* at 134-36. Plaintiff's husband dressed as Santa Claus and presented "gifts" to the physicians. Defendant Dr. Judith Romano received thong underwear; another physician received handcuffs and another received a small bottle of alcohol. Defendant Paul Romano was given a toy pistol. *Id.* at 128-29. According to Plaintiff "[i]t was all in fun." *Id.* at 130. Plaintiff and her husband purchased the "gifts" at "Spencer's." *Id.*. Plaintiff characterized it as a "Dirty Santa event." *Id.*

In the Court's view, the foregoing does not negate the genuine issues of material fact that are otherwise reflected in the record with respect to Plaintiff's hostile work environment claim. The relevance of the foregoing is to be assessed at trial and the trier of fact may weigh the evidence accordingly.

9

that Plaintiff worked in Defendant Dr. Romano's office, office management was Defendant Paul Romano's full time job. *Id.* at 13-14. Defendant Paul Romano also testified that either he or his wife could be considered Plaintiff's immediate supervisor. *Id.* at 14. It is therefore clear that, whether or not Defendant Paul Romano was his wife's employee, he acted as Plaintiff's supervisor. Thus, for purposes of Section 4112.02, he can be held individually liable.

The Defendants contend that summary judgment is warranted as to any claim against Defendant Dr. Judith Romano because there can be no vicarious liability for Defendant Paul Romano's alleged conduct. *Motion for Summary Judgment*, Doc. No. 44, at 6-7. When the alleged acts of harassment are committed by a supervisor, whether the employer can be held liable depends on the consequences of the supervisor's alleged misconduct. *Edwards v. Ohio Inst. of Cardiac Care*, 170 Ohio App.3d 619, 627 (2007). If the alleged instances of harassment result in a "tangible employment action," the employer is strictly liable for the supervisor's sexual harassment. *Faragher*, 524 U.S. at 807; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762-63 (1998). If no tangible employment action is taken, the employer may raise an affirmative defense to liability by establishing: (1) that the employer exercised reasonable care to prevent and promptly correct the alleged behavior; and (2) that the plaintiff employee unreasonably failed to take advantage of that process. *Faragher*, at 807-08. A tangible employment action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761.

As the Court indicated *supra*, Defendant Paul Romano acted as the office manager for his wife's medical practice and was clearly Plaintiff's supervisor. The record does not contain

sufficient evidence to conclude, however, that Defendant Paul Romano was an employee of his wife. The extent to which Defendant Dr. Judith Romano may be held liable, if at all, depends on whether she was her husband's employer. If the evidence establishes that Dr. Romano was the employer, there was no "tangible employment action" in this case because Plaintiff alleges constructive discharge.[5] In the context of a hostile work environment claim, constructive discharge is not tantamount to a "tangible employment action." *Plautz v. Potter*, 156 Fed. Appx. 812, 819 (6th Cir. 2005), citing *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). In *Suders*, the Supreme Court explained:

> [T]o establish "constructive discharge," the plaintiff must make a further showing: She must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response. An employer may defend against such a claim by showing both (1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of sexual harassment, and (2) that the plaintiff unreasonably failed to avail herself of that employer-provided preventative or remedial apparatus. This affirmative defense will not be available to the employer, however, if the plaintiff quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions.

*Id.,* at 134.

Accordingly, if the evidence at trial reveals that Defendant Paul Romano was his wife's employee, and if Plaintiff can establish that she was constructively discharged, then Dr. Romano may defend against liability for Defendant Paul Romano's alleged conduct.[6] The potential

---

[5]Plaintiff has the burden of establishing that she was constructively discharged from her job. Under Ohio law, a person is constructively discharged when a reasonable person, under similar circumstances, would have felt compelled to resign. *Mauzy v. Kelly Servs.*, 75 Ohio St.3d 578, 589 (1996). In the Court's view, genuine issues of material fact exist as to whether Plaintiff was constructively discharged from her job.

[6]The Court notes that Dr. Romano testified on deposition that there was no formal sexual harassment policy in her office. *Deposition of Judith Romano, M.D.* at 14-15. Whether this necessarily defeats her potential defense to liability awaits further development of the facts in this case. In *Faragher*, 524 U.S. at 807, the Supreme Court

11

liability of Dr. Romano awaits further development of the record. At this juncture, Defendant Dr. Romano's motion for summary judgment is denied.

## B. Intentional Infliction of Emotional Distress

Defendants move for summary judgment on Plaintiff's claim for intentional infliction of emotional distress. A claim for intentional infliction of emotional distress requires proof of the following:

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable [person] could be expected to endure it. . . . Serious emotional distress requires an emotional injury which is both severe and debilitating.

*Burkes v. Stidham*, 107 Ohio App.3d 363, 375 (1995) (citations omitted). The Ohio Supreme Court has explained:

> Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" The liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . There is no occasion for the law to intervene in every case where someone's feelings are hurt.

*Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374 (1983), *abrogated on other grounds, Welling v. Weinfeld,* 113 Ohio St.3d 464 (2007).

Defendants contend that the evidence in this case fails to satisfy the elements of the

---

stated: "While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the [employer's] defense."

claim. With respect to the first element of the tort of intentional infliction of emotional distress, Defendants argue that, in light of Plaintiff's alleged conduct at the 2003 Christmas party, Defendants could not have known that Defendant Paul Romano's alleged actions would have caused emotional distress to Plaintiff. As the Court has already concluded, however, the relevance of Plaintiff's conduct at the 2003 Christmas party is to be assessed by the trier of fact. Similarly, the Court finds that genuine issues of material fact exist as to whether Defendant Paul Romano intended to cause Plaintiff emotional distress or whether he knew or should have known that his alleged conduct would cause Plaintiff emotional distress.

The Court also finds that a genuine issue of material fact exists as to whether the alleged misconduct can be considered extreme and outrageous. As Plaintiff points out, at least one Ohio court has held that "sexual harassment on the job is an intentional infliction of emotional distress." *Johnson v. Cox*, No. 96CA622, 1997 WL 152636 at *4 (Ohio App. March 28, 1997). If the trier of fact believes that Defendant Paul Romano engaged in the conduct alleged, it must also be determined if the conduct rises to the level of extreme and outrageous conduct sufficient to support a claim of intentional infliction of emotional distress under Ohio law.

Nevertheless, Defendants contend that Plaintiff's claim fails because she cannot show that she suffered a serious emotional injury as a result of Defendant Paul Romano's alleged acts. Defendants specifically point to the fact that Plaintiff did not seek treatment until six months after she left her job. Defendants also argue that the medical notes of Plaintiff's therapist, Lorna Long, do not support a claim of serious emotional injury.

Plaintiff has filed a Motion to Strike the notes of Lorna Long on the basis that they have not been authenticated. Defendants oppose the motion and request oral argument on the request.

The Court concludes that oral argument is unnecessary to resolve either motion.

Fed. R. Evid. 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." The notes of Lorna Long reflect Plaintiff's name and refer to therapy sessions. The notes also contain the purported signature of Ms. Long. Absent evidence identifying Ms. Long's signature, the Court reserves ruling on the eventual admissibility of the medical notes and will not consider the substance of the notes in resolving the motion for summary judgment. Plaintiff's motion to strike the notes is granted.

In sum, the Court concludes that there exists a genuine issue of material fact as to whether Plaintiff suffered serious emotional injury sufficient to satisfy a claim of intentional infliction of emotional distress. Plaintiff testified that she suffers from ongoing emotional distress as well as irritable bowel syndrom as a result of the alleged harassment. *Plaintiff's Depo.* at 68-72. Plaintiff also testified that she continues to suffer anxiety and fear of working with males. *Id.* at 73-74. In the Court's view, whether Plaintiff's alleged injuries, if proven, are severe enough to satisfy the standard of intentional infliction of emotional distress must be resolved at trial. Defendants' motion for summary judgment on this claim is denied.

### IV.

In light of the foregoing, the Defendants' Motion for Summary Judgment, **Doc. #43,** is **DENIED**. Plaintiff's Motion to Strike, **Doc. #49**, is **GRANTED**.

**IT IS SO ORDERED.**


**March 26, 2010**          *s/Norah McCann King*
**DATE**                    **NORAH McCANN KING**
                            **UNITED STATES MAGISTRATE JUDGE**